DAVENPORT *v.* BLACKMUR *et al.*

(Division B. Feb. 13, 1939. Suggestion of Error Overruled March 27, 1939.)

[186 So. 321. No. 33564.]

Newman M. Dorsey, of Water Valley, for appellant.

Kermit R. Cofer, of Water Valley, and Creekmore, Creekmore & Capers, of Jackson, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

The mayor and board of aldermen of Water Valley, Mississippi, entered into a contract to purchase certain

equipment to establish an automobile testing station, under chapter 200, Laws of 1938. The contract, omitting the signatures, reads as follows:

"Whereas, there was by the Mayor and Board of Aldermen of the City of Water Valley, Mississippi, on August 31, 1938, an order adopted accepting the bid of Judge's Auto Supply for certain equipment necessary to the installation and operation of an automobile testing station under the 1938 Laws; Whereas, that said order provided for the payment of money in the sum of $500 upon the execution of a contract by and between the City of Water Valley of the first part and Judge's Auto Supply of the second part, and this contract has been authorized by the Mayor and Board of Aldermen of said City, by order entered at its regular October, 1938 meeting: Now, therefore, for and in consideration of the sum of Seventeen Hundred Dollars, of which $500.00 are cash in hand paid, receipt of which is hereby acknowledged, the remaining $1,200, together with all charges, to be paid in equal monthly sums of $100.00 each and charges, the second party hereby sells, conveys, and delivers unto first party that certain equipment, pursuant to its bid, described as follows, to-wit:

| | |
|---|---|
| WY40 Brake Tester with DeLuxe Tower | $1,125.00 |
| WJ20 Alignment Indicator | 395.00 |
| WJ15 Head Light Tester | 175.00 |
| WA73 Hydraulic Jack | 59.00 |
| | $1,754.00 |
| Less Discount of | 54.00 |
| Total | $1,700.00 |

"And first party does buy for the named price the described equipment, and agrees to the terms of the payments mentioned herein."

The amount named in the contract to be paid in cash was $500, and $1,200 to be paid in monthly installments of $100 each. J. L. Davenport filed a written request with the city authorities, to bring a suit to test the legality of

this contract, and to recover the $500 paid to Judge. The city refused to bring such suit, and Davenport then applied to the state tax collector to bring a suit, and he likewise refused. Thereupon Davenport filed a bill for an injunction, in which he requested other taxpayers of the municipality to join for the purpose of preventing the consummation of the said contract, on the ground that the city had no authority to engage in the business of testing cars and equipment under the state law; and consequently no authority to purchase the equipment mentioned in the contract.

On the hearing the Chancellor dismissed the bill, and appeal was allowed here.

The statutes which are cited by the respective parties, as to the construction of which the parties differ, are sections 2391 and 2406, Code of 1930, and sections 25, 26 and 133 of chapter 200, Laws of 1938. Section 2391, Code of 1930, is the section which seems to give to municipalities of every class, first, the power to sue and be sued; second, to purchase and hold real estate and personal property, to purchase and hold real estate within the corporate limits for all proper municipal purposes, and for parks, cemeteries, hospitals, schoolhouses, houses of correction, waterworks, electric lights, and sewers; third, to sell and convey any real and personal estate owned by it, and make such order respecting the same as may be deemed conducive to the interest of the municipality, and to exercise jurisdiction over the same; fourth, to make all contracts and to do all other acts in relation to the property and concerns of the municipality necessary to the exercise of its corporate or administrative powers; and fifth, "to exercise such other or further powers as are herein conferred."

The section, in our opinion, does not authorize the city to engage in the business of testing cars, under the requirements of chapter 200, Laws of 1938. The rule of construction is that municipalities have only such powers as are expressly granted by statute, and such powers

as are necessary and appropriate to the exercise of those powers granted by statute. The business here involved is not necessarily incident to one of the powers granted in this statute; neither does it specifically grant the city authority to engage in the particular business mentioned. The property and funds of the municipality, unless expressly otherwise provided, are to be used in the furtherance of its governmental functions, and it is not authorized to engage in private business unless such authority be found in a grant by the statute to the municipality.

The powers herein mentioned appertain, under the statute, to each city, town or village, and it is clear to our minds that it was not the legislative intent to authorize towns and villages to go into private business any further than as authorized by clear warrant of legislative authority.

Section 2406, Code of 1930, reads as follows: ''To make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property; to regulate or prohibit any mill, laundry or manufacturing plant from so operating whereby the soot, cinders or smoke therefrom, or the unnecessary noises thereof, may do damage to or interfere with the use or occupation of public or private property; and to adopt ordinances prohibiting within the corporate limits the commission of any act which amounts to a misdemeanor under the laws of the state.''

The powers herein conferred are the powers to make needful police regulations necessary for the good order and peace of the municipality, and to prevent injury to, or destruction of or interference with public or private property. These are police regulations, designed to control such matters, and do not grant authority to enter into the business which commonly is, and may be, performed by private enterprise.

We have gone through the Code chapter on municipalities, both those under what is known as the aldermanic system, and those under the commission form of government, and fail to find therein any specific power granted to municipalities of any class to engage in this kind of enterprise, although, owing to the nature of the subject to be regulated, affecting the public, it might be competent for the legislature to confer the power necessary to ownership, and operation of such a business. The statutes referred to seem to us only to justify making rules, laws or regulations for the control of business owned and operated by private persons, to secure the safety of the public—not to authorize the municipality itself to enter into the business of testing and inspecting cars, under the law.

We have another class of municipalities, known as special charter municipalities, each having a special legislative charter, which charters may be amended under statutory shemes or by the legislature itself; and it may be that such municipalities have special charter provisions, authorizing them to engage in such business. But there is nothing in the record here to show that the city of Water Valley was so authorized; and the argument proceeds on the idea that it is an ordinary code chapter municipality of the aldermanic form of government.

Section 133, paragraph (d) of chapter 200, Laws of 1938, seems to recognize that some municipalities either have, or may be given, power to operate a business of this kind, but the section itself does not grant such power. It reads: "However, be it further provided when a municipality installs and operates an inspection station, conforming to the standards set up by the commission, and approved by the commission, then no other inspection stations shall be issued a permit to make official inspections in that municipality however, be it further provided that the fee charged by said municipality, for said service, shall be approved by the commission."

The other provisions to which attention is called is section 25 of chapter 200, Laws of 1938, which reads as follows: "The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this act."

Section 26 of this chapter reads as follows: "(a) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from—1. Regulating the standing or parking of vehicles; 2. Regulating traffic by means of police officers or traffic control signals; 3. Regulating or prohibiting processions or assemblages on the highways; 4. Designating particular highways as one-way highways and requiring that all vehicles thereon be moved in one specific direction; 5. Regulating the speed of vehicles in public parks; 6. Designating any highway as a through highway and requiring that all vehicles stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles to stop at one or more entrances to such intersections; 7. Restricting the use of highways as authorized in article XVI of this act. (b) No ordinance or regulation enacted under subdivisions 4, 5, 6, or 7 of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate."

After considering the several sections, and making such investigations as above mentioned in the statutes, we are unable to reach the conclusion that the city is authorized to engage in the business of testing cars, and

consequently that it had no authority to make the contract in connection with which this suit is brought.

The questions involved were raised by demurrer to the bill, leave was granted to the appellant to amend the bill, which was declined, and an appeal to this Court was granted.

The judgment will be reversed and the cause remanded, with leave to the city to answer the bill.

Reversed and remanded.